702 F.2d 1260
 ALL COMMODITIES SUPPLIES, CO., LTD., Plaintiff-Appellant,
v.
M/V ACRITAS, her engines, tackle, etc., In Rem, and Mid
Ocean Lines, Inc. and Initial Maritime Corp., In
Personam, Defendants-Appellees.
 No. 81-3345.
 United States Court of Appeals,
Fifth Circuit.
 April 22, 1983.
 
 Deutsch, Kerrigan & Stiles, G.A. Weller, F.J. Barry, Jr., New Orleans, La., for plaintiff-appellant.
 Jones, Walker, Waechter, John J. Broders, J. Kelly Duncan, New Orleans, La., for Mid-Ocean Lines.
 Chaffe, McCall, Phillips, Toler & Sari, Robert B. Deane, Campbell E. Wallace, New Orleans, La., for Initial Maritime Corp.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before JOHNSON, WILLIAMS and JOLLY, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge.
 
 
 1
 This case is a companion case to TAPCO NIGERIA, Ltd. v. M/V WESTWIND, decided this day, 702 F.2d 1252 (5th Cir.1983). It arises from a suit by All Commodities Supplies, Ltd., a Nigerian corporation, to recover for an alleged shortage and damage to a consignment of rice which was loaded aboard the M/V ACRITAS in August, 1978 in Mobile, Alabama and discharged from the vessel in November of that year in Lagos, Nigeria. Following a trial to the court sitting in admiralty, judgment was entered in favor of the defendants. On appeal, All Commodities argues that (1) the district court was clearly erroneous in finding that all damage and shortage to the rice occurred after its discharge from the vessel to the trucks on the docks, and (2) that the carrier did not fulfill its duty of proper discharge and delivery under the Carriage of Goods by Sea Act, (COGSA) 46 U.S.C. Sec. 1300 et seq., and the Harter Act, 46 U.S.C. Sec. 190-96, by releasing the bagged rice to the Nigerian stevedores in the holds of the ship. Finding no merit to the appellant's claims, we affirm.
 
 I. FACTS
 
 2
 Stomina Establishment, a Lichtenstein corporation, purchased a consignment of bagged rice from Riceland Foods for delivery to Lagos, Nigeria, and subsequently sold this consignment to All Commodities Supplies, Ltd. Shipment was to be made by the M/V ACRITAS, owned by defendant Initial Maritime Corporation and chartered from Initial Maritime by defendant Mid-Ocean Lines, Inc. From August 21 to August 23, 1978, 20,000 bags of rice were loaded onto the ACRITAS in Mobile, Alabama. The vessel sailed from Mobile on August 23 and arrived in Lagos on approximately September 12, 1978. She remained docked until November 20, at which time she was directed to a berth on Tin Can Island Port for unloading. Unloading was accomplished under the exclusive control of the Nigerian Port Authority as compelled by Nigerian law.[1] The vessel interests had neither choice nor control over the stevedores hired by the NPA to discharge the cargo. The stevedores operated the vessel's winches and cargo gear and entered the holds of the ship for the purpose of placing the bags of rice into slings to be lowered over the side of the vessel and loaded directly into the receivers' trucks. Once the rice was discharged from the ship and loaded onto the trucks, however, the NPA-hired stevedores and other unidentified persons began breaking open the bags of rice and pilfering the cargo. The chief officer of the ACRITAS protested to the stevedore foreman. The pilferage was controlled for a short time, but the looting and theft soon resumed.
 
 
 3
 In this case, contrary to WESTWIND, the district court found that there had been no losses on board ship and that the entire consignment of rice as described on the bill of lading was discharged into the consignee's trucks. The court concluded that All Commodities had therefore failed to prove a prima facie case of damage to the goods under COGSA. Any loss which occurred took place after the cargo had been loaded into the trucks and was not imputable to the vessel interests. The court also found that the surrender of the cargo to the government-appointed stevedores constituted proper delivery under the Harter Act.
 
 II. DISCUSSION
 
 4
 This appeal presents a dispute controlled by our holding this day in TAPCO NIGERIA, LTD v. M/V WESTWIND, 702 F.2d 1252 (5th Cir.1983). Both cases involve claims for shortage to cargos of bagged rice loaded at Mobile, Alabama and discharged at the Port of Lagos, Nigeria in late 1978 and early 1979. In this case the alleged damage to the cargo occurred as the result of theft and pilferage by the government-appointed Nigerian stevedores and other unidentified persons at the docks. WESTWIND involved theft but also careless mishandling by stevedores. In each case the cargo interests claimed that the carrier had violated its duty properly to discharge and deliver the goods under COGSA and the Harter Act. The major distinction between the two is that, in WESTWIND, the district court found that damage to the cargo had occurred at least in part on the ship during the discharge process, whereas in the instant case, the district court found that any damage to the rice occurred subsequent to its proper delivery. Because we held in WESTWIND that the carrier cannot be held responsible for damage to the rice even if it occurred during the discharge process, we affirm.
 
 A. Proper Delivery
 
 5
 Appellants first make the identical claim made by the shipping interests in TAPCO v. M/V WESTWIND. They urge that the release of the cargo to the Nigerian stevedores in the holds of the ship did not constitute proper delivery under The Harter Act, 46 U.S.C. Secs. 190-96.[2] Our decisions in WESTWIND and Allstate Insurance Co. v. Imparca Lines, 646 F.2d 166 (5th Cir.1981), control the disposition of this contention.
 
 
 6
 A carrier's duty is to deliver the cargo "to persons charged by the law and usage of the port with the duty to receive cargo and distribute it to the consignee." TAPCO v. M/V WESTWIND, supra, 702 F.2d at 1257; Allstate v. Imparca Lines, supra, 646 F.2d at 168, quoting Tan Hi v. United States, 94 F.Supp. 432, 435 (N.D.Cal.1950). The customs, usage, laws and regulations of the Port of Tin Can Island, Lagos, required the discharge of cargo directly into the receiver's trucks by stevedore labor appointed and controlled by the Nigerian government. As we explained in WESTWIND, the regulations of the port demanding that the stevedores take charge of the cargo from the ship's holds until finally delivered placed the stevedores in absolute control of the cargo. Under these conditions, the carrier "properly provided safe delivery to the farthest point that it could deliver the goods within the limitations of the law, custom and usage of the port." WESTWIND, supra, 702 F.2d at 1258. We agree with the district court's finding that surrender of the cargo to the government-appointed and controlled stevedore labor for offloading constituted proper delivery under the Harter Act.
 
 B.
 
 7
 All Commodities further claims that the district court was clearly erroneous in finding that the entire consignment of rice had been unloaded from the ship and consequently, that the carrier had fulfilled its duty under the Carriage of Goods by Sea Act, 46 U.S.C. Sec. 1300 et seq.[3] Such an argument cannot prevail against our decision today in TAPCO v. M/V WESTWIND.
 
 
 8
 Even were we to accept the claim that damage had occurred to the shipment of rice during the unloading process contrary to the finding of the district court, All Commodities would still be faced with the legal conclusion of WESTWIND that damage arising in Lagos during unloading is of necessity "without the actual fault and privity of the carrier and without the fault or negligence of the agents or servants of the carrier." 46 U.S.C. Sec. 1304(2)(q). We found in WESTWIND that any loss or damage to the rice occurring after the Nigerian stevedores had taken control of the cargo and the ship's winches and booms pursuant to Nigerian law could not be imputed either to the carrier or its agents. As we explained, "[w]ith a total lack of control compelled by law, the carrier could not be negligent and could not be responsible." Supra, 702 F.2d at 1260.
 
 III. CONCLUSION
 
 9
 We affirm the ruling of the district court that proper delivery under the Harter Act was accomplished by surrender of the cargo for offloading to the Nigerian stevedores as required by the law of the Port of Lagos. Additionally, we find that even if All Commodities had proved a prima facie case under COGSA of damage to the goods prior to receipt by the consignee, Nigerian law, which compelled the government-paid stevedores to take total charge of the cargo from the ship's hold until finally received by the consignee, relieved the carrier from any responsibility for that damage.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 For a more detailed discussion of the rules and regulations of the Port of Lagos and the functions of the Nigerian Port Authority, see our opinion in TAPCO Nigeria, Ltd. v. M/V WESTWIND, supra
 
 
 [2]
 The Harter Act imposes upon carriers of goods in international commerce the duty "to carefully handle and stow her cargo and to care for and properly deliver same." 46 U.S.C. Sec. 191
 
 
 [3]
 The court concluded that All Commodities had failed to rebut the presumption of receipt by the consignee in good condition triggered by its failure to protest damage to the cargo within three days. See 46 U.S.C. Sec. 1303(6); Associated Metals and Minerals Corp. v. M/V RUPERT DE LARRINAGA, 581 F.2d 100, 101 (5th Cir.1978)