**W.K. WEBSTER & CO.,**
Plaintiff–Appellee,

v.

**AMERICAN PRESIDENT LINES,
LTD.,** Defendant–Appellant.

No. 1251, Docket 93–9040.

United States Court of Appeals,
Second Circuit.

Argued March 9, 1994.

Decided Aug. 2, 1994.

Michael J. Ryan, New York City (Jennifer A. Williams, Hill, Betts & Nash, of counsel), for defendant-appellant American President Lines, Ltd.

James E. Ryan, New York City (Richard F. Salz, Dougherty, Ryan, Giuffra & Zambito, of counsel), for plaintiff-appellee W.K. Webster & Co.

Michael Marks Cohen, New York City (Burlingham Underwood, of counsel), for amicus curiae Society of Maritime Arbitrators, Inc.

Before: FEINBERG and MINER, Circuit Judges, and KNAPP, District Judge.*

MINER, Circuit Judge:

Defendant-appellant American President Lines, Ltd. ("APL") appeals from a judgment entered in the United States District Court for the Southern District of New York (Griesa, J.) confirming an arbitration award for cargo loss rendered in favor of plaintiff-appellee W.K. Webster & Co. ("Webster") and granting attorneys' fees and costs to Webster in the district court proceeding. The amount awarded in arbitration was $93,215.42 plus interest of $42,100.68, and the amount granted for attorneys' fees and costs was $2,000. On this appeal, APL challenges the appointment of a lawyer as a member of the arbitration panel on the ground that the charter party required the arbitrators to be "commercial men." APL also contends on appeal that the panel disregarded the law in failing to determine when the cargo delivery occurred and that there was no basis for the district court's award of counsel fees. For the reasons that follow, we vacate the award of counsel fees but otherwise affirm.

---

* Honorable Whitman Knapp of the United States District Court for the Southern District of New York, sitting by designation.

## BACKGROUND

On June 13, 1985, APL and the Government of Mozambique entered into a charter party for the hire of the S/S PRESIDENT CLEVELAND ("Vessel") to carry a cargo of bagged rice from California to several ports in Mozambique. Clause 11 of the Charter Party provided that "[i]n all cases stevedores shall be deemed to be the servants of [APL] and shall work under the supervision of the Master [an APL employee]." Prior to sailing from California, the Vessel was loaded with 258,167 bags of rice, and APL issued a negotiable bill of lading for the cargo containing the following legend: "This is a Charter Party Bill of Lading." After an uneventful voyage, the Vessel arrived at the Port of Maputo, Mozambique on August 30, 1985. Log entries made by APL personnel at the port noted numerous instances of rough handling of cargo, broken and/or damaged bags, apparent pilferage of cargo and possible diversion of cargo. According to the Maputo Customs Certificate, 4,669 bags of rice were recorded as short-landed. The cargo underwriters paid the consignee for the loss of cargo, and Webster was appointed as recovery agent for the subrogated cargo underwriters.

On August 5, 1988, Webster demanded arbitration of the loss claim and appointed its arbitrator pursuant to Clause 44 of the Charter Party, which provides:

All disputes arising out of this contract shall be arbitrated at New York in the following manner, and be subject to U.S. Law: One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be a rule of the court. *The Arbitrators shall be commercial men.* Such Arbitration is to be conducted in accordance with the rules of the Society of Marine Arbitrators, Inc.

(emphasis added). Shortly after the demand was made, APL nominated its arbitrator, and the two arbitrators joined to select the third,

Bartholomew Hennessey. Mr. Hennessey, a lawyer, was designated as Chairman of the panel. At the time the arbitration was commenced, he was a consultant employed by the law firm of Scherling, Davidson & Rech, having been retained in 1984 to handle claims arising from the Hellenic Lines bankruptcy. Although Mr. Hennessey had commenced his career in 1974 as an attorney with a New York admiralty firm, he later became employed as Manager for Cargo Claims at Lamorte Burns & Co., Inc., and at Transport Mutual Services, Inc., correspondents for the English Protection and Indemnity ("P & I") Associations that insure ocean vessels. He served as Claims and Insurance Manager of Hellenic Lines prior to its bankruptcy. In the written disclosure required before the commencement of arbitration, Hennessey described himself as an "independent consultant in the areas of marine insurance, claims and charter parties." It appears that Hennessey became a partner in the Scherling, Davidson law firm in June of 1992. The parties do not dispute that APL's counsel in the arbitration proceeding and in the district court, Michael Ryan, knew Hennessey personally since 1974. During the pendency of the arbitration, the two maintained social contact. However, the parties disagree as to the time when Ryan first knew that Hennessey no longer was employed as an independent consultant.

Arbitration proceedings were held on October 23, 1990 and July 30, 1991. Although the parties presented documentary evidence and briefs to the panel up until March 27, 1992, no witnesses were called. On July 20, 1992, the unanimous panel issued its Final Award granting recovery in favor of Webster in the sum of $93,215.45, plus $42,100.68 in accrued interest, for a total of $135,316.13. The panel found that Webster had established a *prima facie* case for liability by virtue of the clean Bill of Lading and the Customs Shortage Certificate, which the panel described as the "best and only evidence of the extent of the loss." The panel also held that, pursuant to Clause 44 of the Charter Party, APL was responsible for any negligence on the part of the Maputo stevedores and, having concluded that the loss occurred while the cargo was in the hands of the stevedores, found APL lia-

ble. Accordingly, the panel found it unnecessary to determine when "delivery" took place, finding "sufficient evidence to establish damage and loss to the cargo during the period the cargo was being removed from the vessel's hold until landed dockside."

In September of 1992, Webster petitioned the district court to confirm the arbitration award. APL sought to vacate the award, contending that Hennessey was not a "commercial man" due to his status as an attorney, and contending also that the panel displayed a manifest disregard for the law because it declined to rule on the question of when delivery occurred. Webster responded to these contentions by arguing that there was no need for the arbitrators to rule on the question of delivery under the circumstances and that Hennessey was in fact a "commercial man." Webster's response included the contention that APL had waived any challenge to Hennessey's status as a commercial man because APL Counsel Ryan was aware of Hennessey's status as an attorney before and during the pendency of the arbitration and failed to raise any objection until after an award adverse to APL was issued.

In an opinion dated September 3, 1993, the district court granted Webster's petition to confirm the award, denied APL's application to vacate the award and granted counsel fees in the sum of $2,000 to Webster. The district court "s[aw] no reason why a practicing attorney cannot also qualify as a 'commercial man.' The arbitrator in question had spent many years as the insurance and claims manager for a shipping company and so was clearly experienced in commercial matters." In view of this determination, the district court found it unnecessary to determine whether APL had waived any objection to Hennessey's appointment as arbitrator. The district court also determined that the panel did not demonstrate a manifest disregard for the law in determining that the charter party clearly imposed liability upon APL under the circumstances and therefore that it was not necessary to determine when delivery occurred. Judgment was entered on September 15, 1993, and the district court denied APL's motion for reargument on September 23, 1993.

## DISCUSSION

 APL and amicus curiae, Society of Maritime Arbitrators, Inc., apparently take the position that a person cannot be a "commercial man" and an attorney at one and the same time. We disagree. We understand that those engaged in maritime disputes may desire to have people with experience in maritime commerce as arbitrators. More than fifty years ago, we noted that "commercial men ... are likely to be more familiar than the average lawyer ... with the relevant background of international shipping." *See Kulukundis Shipping Co., S.A. v. Amtorg Trading Corp.,* 126 F.2d 978, 988–89 (2d Cir. 1942). Parties to an arbitration involving a particular trade frequently bind themselves to choose arbitrators who are "familiar with the practices and customs of the calling." *See American Almond Prods. Co. v. Consolidated Pecan Sales,* 144 F.2d 448, 450 (2d Cir.1944). The agreement to designate only commercial men as arbitrators in this case manifests an intention to have the arbitration conducted by those who have become familiar with the practices and customs of the maritime trade through experience gained in the conduct of maritime commerce rather than in the practice of admiralty law. *See Sanko S.S. Co. v. Cook Indus., Inc.,* 352 F.Supp. 386, 388 (S.D.N.Y.1972) (recognizing distinction between commercial men and lawyers), *rev'd on other grounds,* 495 F.2d 1260 (2d Cir.1973); *Fukaya Trading Co., S.A. v. Eastern Marine Corp.,* 322 F.Supp. 278, 284 (E.D.La.1971) (same).

 We here note our disagreement with the holding in *Aramco Servs. Co. v. EAC Bulk Transp., Inc.,* 1993 WL 405996 (M.D.Fla. Jan. 25, 1993). There, the charter party required the arbitrators to be "commercial men conversant with shipping matters," and one of the parties appointed an admiralty lawyer. In approving the appointment of a lawyer presumably without practical commercial experience, the court held that "commercial man" referred to anyone "employed in, or familiar with, the commercial shipping industry." *Id.* at \*1. We think that mere familiarity with the industry is insufficient and adopt the distinction made in *Pando Compania Naviera S.A. v. Filmo,*

*S.A.S.* [1975] 1 Lloyd's Rep. 560 (Q.B.) as follows:

> The use of the words "commercial men" would also exclude those whose experience is *solely* as practising members of the legal professions. Some of them can rightly be described as "commercial lawyers", but whilst they serve the commercial world they are not of it.

(emphasis supplied).

In *Pando,* the court approved the appointment of one who had ceased to practice commercial law and entered the world of commerce. The challenged arbitrator was a retired solicitor who became a full-time arbitrator and a member of the London Maritime Arbitrators' Association. He served on the boards of directors of several shipping companies after his retirement and qualified as a commercial man by virtue of that service. According to the *Pando* court, once the necessary practical experience is acquired, the status of "commercial man" attaches and remains:

> It does not matter whether or not the arbitrator has retired from commerce or is still engaged in it. What matters is his practical commercial experience.

*Id.*

Mr. Hennessey, the arbitrator challenged in this case, had substantial practical experience on the commercial side of the maritime industry. He spent the better time of his career working in the areas of maritime insurance, claims and charter parties. He was employed as Claims and Insurance Manager by a large ocean carrier, as a cargo claims adjuster for private firms that were correspondents for insurers of ocean vessels and as an independent consultant in the fields of his expertise. This is the type of substantial, practical, commercial, non-legal experience that is contemplated by the term "commercial man." Although Mr. Hennessey practiced as an admiralty lawyer early on in his career and, at the end of the arbitration proceeding subject of this appeal, became a partner in an admiralty law firm, it cannot be said that he obtained his commercial experience "*solely* as [a] practising member[ ] of the legal profession[ ]." (emphasis supplied).

Indeed, the opposite is true—the years between admiralty practice were taken up by employment on the commercial side of the ocean shipping business.

Both APL and Amicus Society of Maritime Arbitrators seem to acknowledge that lawyers can be commercial men as long as they are not engaged in the practice of law. Apparently, the Society includes on its roster several attorneys who are not now practicing law but who are shipping company and insurance executives. The Society concludes its principal brief with this statement: "The requirement in charter parties that marine arbitrators be 'commercial' persons means that they cannot be practicing lawyers." We perceive no reason why this should be so. The practical commercial experience that a lawyer gains during the years of his non-legal work in the industry cannot be said to fall away the moment he assumes the mantle of practicing lawyer. There is no good reason why one who spends his or her career as a practicing lawyer should be considered a commercial person the moment he or she withdraws from practice and takes up a position in the maritime industry, while one who has spent his or her career on the commercial side of the industry and then takes up the practice of law should not. We hold that, if they fit, a lawyer can wear the two hats, and we have no difficulty upholding the district court's determination that Arbitrator Hennessey was a "commercial man" within the meaning of Clause 44 of the Charter Party. We therefore find it unnecessary, as did the district court, to determine whether APL waived its objection to the designation of Mr. Hennessey.

 APL also argues that the arbitration panel demonstrated a "manifest disregard for the law" by failing to decide when delivery of the cargo occurred. This argument is without merit. Vacatur of an arbitration award is permitted when an arbitration panel has demonstrated a manifest disregard of the law. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986). The governing law alleged to have been ignored must be well-defined, explicit and clearly applicable. *Id.* at 934. A court must not disturb an award simply because of an arguable difference of opinion regarding the meaning or applicability of the laws. *Id.*

In this case, APL's argument is that, since Maputo is a government-controlled port, APL's delivery of the cargo to the local customs authorities and the port stevedores constituted complete delivery and performance. The law that APL urges should have been followed is inapposite. The cases submitted to the panel certainly stand for the proposition that, when cargo is delivered to a government-controlled port such as Maputo, the carrier's responsibilities end when the cargo is turned over to the port authority. However, none of these cases involved a charter party provision deeming the stevedores at the discharge port servants of the vessel's owner and requiring them to work under the supervision of the vessel's master. *See, e.g., All Commodities Supplies Co. v. M/V Acritas*, 702 F.2d 1260 (5th Cir.1983); *Farrell Lines Inc. v. Highlands Ins. Co.*, 696 F.2d 28 (2d Cir.1982) (per curiam). The Charter Party here contained just such a provision in its Clause 11.

In this case, the arbitration panel found that APL knew or should have known of the customs of the Port of Maputo and, if it desired to limit its liability in accordance with case law and the bill of lading, should have contracted for such a provision in the charter party. The panel concluded that Clause 11 was controlling and, since it determined that the cargo damage occurred during offloading by the stevedores, held APL liable. This certainly is a reasonable interpretation of the relevant documents and case law submitted by the parties. Even if we were to disagree with the arbitration panel's interpretation or conclusion, which we do not, we could not say that the arbitration panel manifestly disregarded the law by declining to address the issue of delivery. For this reason, the district court did not err by declining to vacate the award.

 With regard to sanctions, the district court stated only that "petitioner is entitled to $2,000 for attorneys' fees and costs." Presumably, this sanction was awarded under Fed.R.Civ.P. 11, as requested in Webster's petition to enforce the arbitration award.

670

We find no basis for the award of sanctions under Rule 11 in this case.

▮▮ A pleading, motion or other paper violates Rule 11 either when it

has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985) (emphasis in original), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *see O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 705–06 (2d Cir.1990). We are required to apply an objective standard of reasonableness in deciding whether there has been a violation of Rule 11. *See Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 550–52, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991). We review a district court's Rule 11 decision under an abuse of discretion standard. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405–07, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).

We do not think that the application of APL to vacate the arbitration award and its opposition to confirmation of the award were interposed for any improper purposes. Nor do we find that the commercial man contention and the manifest disregard of law contention are so patently void of any legal or factual basis that an award of attorneys' fees was required. APL clearly presented colorable claims with regard to the issues it raised and made plausible arguments in support of its positions. Accordingly, sanctions are not warranted in this case.

## CONCLUSION

We vacate the award of attorneys' fees and affirm the judgment of the district court in all other respects.