In the Matter of the Arbitration E.I.
DUPONT DE NEMOURS AND
COMPANY, Petitioner,

v.

JO TANKERS, B.V., Jo Elm, B.V. and
M/T Jo Elm, Respondents.

No. 00 CIV 5644.

United States District Court,
S.D. New York.

April 30, 2001.

### *OPINION AND ORDER*

KOELTL, District Judge.

This is a petition by E.I. Dupont De Nemours and Company ("DuPont") pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* to vacate an arbitration award dated May 5, 2000 ("Award"), in favor of the respondents Jo Tankers, B.V., Jo Elm, B .V. and M/T Jo Elm (collectively "Jo Tankers"). DuPont asserts that the majority of the arbitration panel manifestly disregarded the law of carriage when it determined that DuPont did not establish a claim against Jo Tankers for loss and damage with respect to a cargo of tetrohydrofuran ("THF") carried on board the M/T Jo Elm pursuant to both a contract of affreightment ("COA") between Jo Tankers B.V. and Dupont dated October 25, 1995, and a bill of lading dated October 10, 1996.[1] Jo Tankers opposes the petition and cross-petitions to confirm the Award.

### I.

DuPont is a corporation organized and existing under the laws of Delaware with an office and place of business in Wilmington, Delaware. The respondents, Jo Tankers, B.V., and Jo Elm, B.V. are corporations organized and existing under the laws of a foreign country. Respondent Jo Elm B.V. is the registered owner of respondent M/T Jo Elm. (Pet.'s Petition to Vacate Arbitration Award ("Pet."), ¶¶ 2–4; Resp'ts.' Cross–Petition to Confirm Arbitration Award ("Cross–Pet."), ¶¶ 2–3.)

On or about October 25, 1995, DuPont entered into the COA with Jo Tankers, B.V. which provided for arbitration of disputes in New York. (Pet. Ex. 1, Part II, clause 24.) Sometime in early October 1996, a cargo of THF was delivered by DuPont and was loaded onto the M/T Jo Elm at Houston, Texas for carriage to Belgium pursuant to the terms and conditions of the COA and the bill of lading. (Pet. ¶ 6; Cross–Pet. ¶ 5; Pet. Exs. 1 & 2.)

Disputes arose between the parties under both the COA and the bill of lading concerning alleged loss and damage of the THF. DuPont demanded arbitration pursuant to Part II, clause 24 of the COA. (Pet. ¶ 7; Cross–Pet. ¶ 12; Pet. Ex. 1, Part II, clause 24.) A panel of arbitrators was formed, which eventually issued the Award, in which a majority of the panel determined that DuPont had not established a claim against Jo Tankers for loss and damage with respect to the THF. (Pet. Exs. 3, 4 & 5.)

In discussing the background of the dispute between the parties, the arbitration panel majority noted that DuPont's:

> entire handling process from the manufacturing plant to loading onboard tankers for shipment is a dedicated system with testing points all along the way. The THF which was eventually loaded onto the JO ELM had, therefore, been checked, tested and analyzed extensively upon leaving the plant, ... and finally at the vessel's pumpstacks, immediately prior to entering the two designated vessel's cargo tanks. At all checkpoints the product appears to have been on specification for water content or well within the 300 parts per million (PPM) of moisture, which typically contains in the process of manufacture. Shortly after the cargo entered the vessel's tanks, howev-

---

1. The arbitration panel consisted of three members: Manfred W. Arnold, Klaus C.J. Mordhorst, and Raymond A. Connell, Esq. Mr. Connell dissented from the Award.

er, the THF was found excessively off specification. . . .

(Pet. Ex. 5 at 2–3.) The majority also noted that THF samples drawn at the pumpstacks were found to be on specification and in good order. While foot samples were taken from both cargo tanks, analyses were deferred in the interests of expedition. However, later analysis of the foot samples revealed extensive moisture contamination. (Pet. Ex. 5 at 3.) Although DuPont became aware of the contamination at the loadport, it nevertheless ordered the vessel to proceed with the voyage to Belgium. (Pet. Ex. 5 at 3.)

In setting forth DuPont's position the majority stated that: "Test results unmistakably showed the THF was in good order and condition at the time it was loaded to the vessel's pump stacks. It further showed that the cargo became seriously contaminated shortly after entering the vessel's tanks. . . ." (Pet. Ex. 5 at 5.) It was not entirely clear, however, in making this statement, whether the majority was recharacterizing DuPont's assertions or was making a finding of fact. The majority also noted that Jo Tankers argued that it "had demonstrated that the contamination did not and could not have taken place on board the [M/T Jo Elm] and had shown that the cargo already was contaminated before it entered the [M/T Jo Elm's] cargo tanks." (Pet. Ex. 5 at 12.)

After reviewing the evidence and the arguments made by the parties, the majority of the arbitration panel found that neither side conclusively defined and identified the source of the water which contaminated the THF and held that DuPont had not proved its case with a preponderance of the credible evidence. (Pet. Ex. 5 at 9 .) The majority also reasoned that foot sampling was an industry practice, that "foot sampling [on the part of DuPont] before continuing loading would . . . have been a prudent procedure" and

would have contained the damage, and that, under the circumstances, Jo Tankers should not bear the consequences for DuPont's failure to take foot samples. (Pet. Ex. 5 at 9–10, 13.) The majority of the arbitration panel concluded that the burden of persuasion as to how the THF became contaminated rested with DuPont and that DuPont failed to carry its burden of proof, thus the majority rejected DuPont's claim. (Pet. Ex. 5 at 13.) These petitions followed.

In the parties' initial submissions on the motion to vacate the Award and the cross-motion to confirm the Award, the parties disputed whether the arbitration panel majority found that the THF was delivered to the M/T Jo Elm in good order and condition. The Court previously determined that the Award was unclear with respect to that issue and remanded the Award to the arbitration panel for clarification as to whether the arbitration panel found that the cargo was in good order and condition on entering the M/T Jo Elm vessel. *See* Remand Order dated February 14, 2001. In response to the question on remand, the arbitration panel stated:

1.  the majority (Arnold and Mordhorst) found the evidence presented at the hearings insufficient to establish whether the contamination occurred during pre-loading or post-loading procedures and, therefore, could not conclude that the cargo was in good order and condition upon entry into the [M/T Jo Elm's] tanks.

2.  The dissent (Connell) found the evidence sufficient to establish the cargo in good order and condition upon entry into the [M/T Jo Elm's] tanks.

Arbitrators' Response to Remand Order dated March 14, 2001 ("Arbitrators' Resp."), attached to Letter from Armand M. Paré, Jr. to the Court dated March 23,

2001 ("Paré Letter").)[2] DuPont maintains that, despite the arbitration panel's clarification on remand, the majority of the arbitration panel manifestly disregarded the law of carriage and argues that Award should be vacated. Jo Tankers asserts that the Award should be confirmed.

## II.

DuPont challenges the Award based on the doctrine of manifest disregard of the law. DuPont's task is a formidable one. A party challenging an arbitration award bears a heavy burden of proof, *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987), and limited review of arbitration decisions is necessary both to effectuate the parties' agreement to submit their disputes to arbitration and to avoid costly and protracted litigation about issues the arbitrators have already decided. *See, e.g., DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997); *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993); *Consolidated Rail Corp. v. Metropolitan Transport. Auth.*, No. 95 Civ. 2142, 1996 WL 137587, at *19 (S.D.N.Y. Mar. 22, 1996).

Under the doctrine of manifest disregard of the law, an arbitration award may be vacated if it is based on "overt disregard of the law and not merely for an erroneous interpretation." *Folkways*, 989 F.2d at 111 (citing *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). In the leading case of *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir.1986), the Court of Appeals for the Second Circuit held that:

> "Manifest disregard of the law" by arbitrators is a judicially-created ground for vacating their arbitration award.... [I]t clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

*Id.*, 808 F.2d at 933 (citations omitted); *see also DiRussa*, 121 F.3d at 821; *W.K. Webster & Co. v. American President Lines, Ltd.*, 32 F.3d 665, 669 (2d Cir.1994); *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 893 (2d Cir.1985) ("Manifest disregard of the law may be found ... if the arbitrator 'understood and correctly stated the law but proceeded to ignore it.'" (citation omitted)).

The review of an arbitration award for manifest disregard of the law is not an inquiry into the correctness of the decision or a determination of whether the court would have reached the same conclusion. *Bobker*, 808 F.2d at 933–34; *Siegel*, 779 F.2d at 892–93 ("The erroneous application of rules of law is not a ground for vacating an arbitrator's award, nor is the fact that an arbitrator erroneously decided the facts.") (citations omitted)). As the Court of Appeals explained in *Bobker*:

---

**2.** The petitioner made further inquiry regarding the arbitration panel's response to the Remand Order. (*See* Letter from Armand M. Paré, Jr. to the arbitration panel dated March 15, 2001, attached to Paré Letter.) The arbitration panel responded stating "that [the arbitration panel] answered the question which is the subject of the Remand Order, when we stated that the Panel-majority could not estab- lish whether the contamination occurred during pre-loading or post-loading procedures and, therefore, could not conclude that the cargo was in good order and condition upon entering the M/T JO ELM vessel." (Letter from Klaus C.J. Mordhorst to Armand M. Paré, Jr. dated March 22, 2001, attached to Paré Letter.)

Judicial inquiry under the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of the laws urged upon it. *Bobker,* 808 F.2d at 934; *see also Consolidated Rail,* 1996 WL 137587, at *19 (manifest disregard standard is "extremely high" and "[t]he reviewing court is not to substitute its own judgment of the facts or interpretation of the contract for that of the arbitrators, even when convinced that they were plainly wrong.").

DuPont argues that, when the majority of the arbitration panel found that it could not conclude that the cargo was in good order and condition upon entry into the M/T Jo Elm's tanks, the majority manifestly disregarded the law because it placed the burden on DuPont to prove that the contamination of the THF occurred on the M/T Jo Elm. Under the Carriage of Goods by Sea Act, 46 App. U.S.C. § 1300 *et seq.* ("COGSA"), which the parties agree governs the rights and obligations of the parties in this lawsuit, a cargo owner asserting a claim against a carrier for the loss or damage of cargo must first establish a prima facie case of loss or damage. In order to establish a prima facie case of loss or damage under COGSA, a cargo owner must prove that the damage or loss to the goods occurred "while in the carrier's custody," *Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347, 351 (2d Cir.1981) (quotation omitted); *see also Kanematsu–Gosho Ltd. v. M/T Messiniaki Aigli,* 814 F.2d 115, 118 (2d Cir.1987). A cargo owner can meet its prima facie case by showing "that the cargo was delivered to the carrier in good condition and that the cargo either did not reach its destination or left the carrier's custody in damaged condition." *English Elec. Valve Co., Ltd. v. M/V Hoegh Mallard,* 814 F.2d 84, 87 (2d Cir.1987); *see also Thyssen, Inc. v. S/S Eurounity,* 21 F.3d 533, 538 (2d Cir. 1994); *Vana Trading Co., Inc. v. S.S. Mette Skou,* 556 F.2d 100, 104 (2d Cir. 1977); *Dorland Mgmt. Inc. v. M/V MSC Daniela,* No. 96 Civ. 6747, 1997 WL 626399, at *1 (S.D.N.Y. Oct. 9, 1997); *Sogem–Afrimet, Inc. v. M/V Ikan Selayang,* 951 F.Supp. 429, 437 (S.D.N.Y.1996), *aff'd,* 122 F.3d 1057 (2d Cir.1997). After the cargo owner establishes a prima facie case, the burden then shifts to the carrier to show that any loss or damage falls within one of COGSA's exceptions. *See Thyssen,* 21 F.3d at 538; *Westway Coffee Corp. v. M.V. Netuno,* 675 F.2d 30, 32 (2d Cir. 1982); *Dorland Mgmt.,* 1997 WL 626399, at *1; *Sogem–Afrimet,* 951 F.Supp. at 437.

There was no manifest disregard of the law in this case. After considering the evidence and DuPont's burden to establish a prima facie case, the majority of the arbitration panel determined that DuPont did not sufficiently show that the damage to the THF occurred while in Jo Tanker's custody because the evidence presented was insufficient to establish whether the contamination occurred during pre-loading or post-loading procedures and thus the majority could not conclude that the cargo was delivered to the M/T Jo Elm in good order and condition. Thus the burden did not shift to Jo Tankers to show that any loss or damage fell within one of COGSA's exceptions. Therefore, the majority's determination is in accordance with the law under COGSA and there was no manifest disregard of the law of carriage.

Ultimately, DuPont's challenge amounts to a disagreement with the result the majority of the arbitration panel reached and the majority's findings of fact. Such a challenge goes beyond the limited review permitted under the doctrine of manifest

disregard of the law. There is nothing to indicate that the majority of the arbitration panel manifestly disregarded the law, and because DuPont has shown only that it takes issue with the majority's decision rather than demonstrating that clearly applicable law was ignored or overlooked, DuPont's petition to vacate the Award is denied.

## CONCLUSION

For the foregoing reasons, the petitioner's petition to vacate the Award is dismissed and the respondents' motion to confirm the Award is granted. The Clerk of the Court is directed to enter a Judgment in accordance with this Opinion and to close this case.

**SO ORDERED.**