In the matter of the **ARBITRATION BETWEEN SPACE SYSTEMS/LORAL, INC.**, Petitioner,

and

**YUZHNOYE DESIGN OFFICE** and **Po Yuzhnoye Machine–Building Plant**, Respondents.

**No. 01 CIV. 458(JGK).**

United States District Court, S.D. New York.

Oct. 3, 2001.

---

1. The *Ullah* opinion is not on point because that Court expressly treated removal as if made under § 1441(a), not § 1441(b)

**OPINION AND ORDER**

KOELTL, District Judge.

This is a petition pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., to confirm an arbitration award and a cross-motion to vacate the award on the grounds that it was made in manifest disregard of the law. The petitioner, Space Systems/Loral, Inc. ("Space Systems" or "SS/L"), also moves to amend its petition to allege that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq., is a basis for jurisdiction. The respondents, Yuzhnoye Design Office and PO Yuzhnoye Machine–Building Plant (collectively, "Yuzhnoye"), oppose the motion to amend, and move to dismiss the petition on the basis that it was improperly served and therefore should be dismissed under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction and Fed.R.Civ.P. 12(b)(5) for improper service of process.

**I.**

There is no dispute with respect to the following facts. In May, 1995, Space Systems, a Delaware corporation, entered into a Launch Services Agreement with Yuzhnoye, two closely related Ukrainian entities. (Aff. of Jonathan W. Lubell, sworn to Mar. 19, 2001 ("Lubell Aff.") Ex. 6 ("LSA").) The parties agreed that Yuzhnoye, which had never before provided commercial launch services (Lubell Aff. Ex. 12 at 84), would place 36 Space Systems satellites into orbit. (*Id.* at 122, 445.) The parties envisioned three separate launches, each of which would use a single rocket to transport twelve satellites. (*Id.*; LSA § 10.0.) The total price for the three launches set in the LSA was $79.1 million, plus other consideration not at issue here. (LSA § 4.1.)

By September, 1998, Space Systems had paid $76.97 million to Yuzhnoye in accordance with the LSA and subsequent memoranda of agreement. (Aff. of Wilhemina A. de Harder, sworn to Apr. 20, 2001 ("de Harder Aff.") Ex. O ("SS/L App."), Exs. 5, 20.) At that time, Yuzhnoye attempted the first launch. It failed; the launch vehicle was destroyed along with the twelve satellites on board. (SS/L App. Ex. 14 at 371.) Space Systems recovered $28.5 million in insurance proceeds from the failed launch. (SS/L App. Ex. 20.) In June, 1999, Space Systems sent Yuzhnoye a notice purporting to terminate the LSA and demanding a refund of $48.47 million, representing its total payments reduced by the insurance proceeds. (SS/L App. Ex. 24.)

Space Systems claimed that it was entitled to this full refund under § 19.3 of the LSA, which covers "no cost termination" of the LSA. (*Id.*) Yuzhnoye disagreed with Space Systems' interpretation of the LSA. (de Harder Aff. Ex. M, Ex. 4.) The LSA provides that if they cannot reach an amicable settlement, the parties shall, at the written request of either party, submit disputes "arising out of this LSA" to arbitration, and that "[t]he arbitration award made shall be final and binding upon the parties, and judgment may be entered thereon, upon the application of either [p]arty, by any court having jurisdiction." (LSA § 21.2.)

The parties submitted the dispute to arbitration, and proceedings under the auspices of the American Arbitration Association commenced in New York in October, 2000. (Lubell Aff. Ex. 4.) On December 20, 2000, the three-member panel issued a written decision (Lubell Aff. Ex. 1) awarding Space Systems $48.47 million, plus interest—$54,459,032 in total. Arbitrators E. Leo Milonas and John Wilkinson concurred in the decision and

arbitrator Victor P. Goldberg dissented. Thereafter, the panel issued a unanimous decision on February 21, 2001 in which it found that Yuzhnoye's counterclaim for $14.5 million "was considered and rejected by a majority of the panel in connection with [its] original Award." (Lubell Aff. Ex. 2.) Space Systems filed this petition to confirm the award.

## II.

Yuzhnoye moved to dismiss the petition to confirm the award on the basis that it was not properly served. Space Systems then moved to amend the petition to plead subject matter jurisdiction under the FSIA and to take advantage of the FSIA's service of process provision.

## A.

 Under Fed.R.Civ.P. 15(a), a party may amend its pleading once as a matter of course before a responsive pleading has been served. A motion to dismiss is not a responsive pleading for the purposes of this Rule. *Worcester County Nat'l Bank v. Cohn*, 48 F.R.D. 285, 286 (S.D.N.Y. 1969); 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1483, at 585 & n. 9 (2d ed.1990). In this case, Space Systems was entitled to amend its petition without leave of the Court because Yuzhnoye moved to dismiss and cross-moved to vacate the arbitration award, but did not serve a responsive pleading.

 In any event, motions to amend should be freely granted. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Leave to amend should be granted in the absence of "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir.), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 623,

148 L.Ed.2d 533 (2000). Here, Yuzhnoye has made no showing that it would be prejudiced by the Court's granting the motion to amend the petition at this time, or that the petitioner has engaged in undue delay or is acting out of bad faith in seeking the amendment. The motion to amend was made promptly after the propriety of service was questioned and it became clear that an alternative justification for service was available. The amended pleading is not futile; the remainder of this opinion indicates that it is well founded. Thus, even if Space Systems were unable to amend its petition as of right, the Court would grant it leave to do so. The motion for leave to file the amended petition is therefore granted.

### B.

■ The amended petition alleges that under the FSIA, this Court has jurisdiction over Yuzhnoye as an instrumentality of a foreign state. The FSIA is the exclusive basis for obtaining subject matter jurisdiction over foreign sovereigns in the courts of the United States and of the States. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). The FSIA was enacted to clarify the circumstances under which litigants may sue foreign states and their controlled enterprises in federal and state courts. *See* 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3662, at 160–61 (3d ed.1998). Section 1330(a) of Title 28 of the United States Code, which was added by the Act, provides:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–

1607 of this title or under any applicable international agreement . . . .

28 U.S.C. § 1330(a).

Section 1603 provides that:

> (a) A "foreign state," except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

> (b) An "agency or instrumentality of a foreign state" means any entity—

> (1) which is a separate legal person, corporate or otherwise, and

> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country . . . .

28 U.S.C. § 1603.

Space Systems has submitted documents, together with the opinion of an attorney admitted in the Ukraine, which show that Yuzhnoye's component companies are legal entities separate from the Republic of the Ukraine; that they are both wholly owned by the Republic of the Ukraine; and that they are organized under the laws of the Republic of the Ukraine, not a State of the United States or a third country. (Decl. of Vladimir N. Zakhvataev, dated Apr. 20, 2001.) Yuzhnoye does not dispute the documents or the Ukrainian attorney's interpretation of them. Accordingly, Yuzhnoye is an "agent or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603(b), and a "foreign state" within the meaning of 28 U.S.C. §§ 1603 and 1330.

■ A foreign state is immune from the jurisdiction of the courts of the United States unless a statutory exception to foreign sovereign immunity applies. See 28 U.S.C. § 1604. "Under the FSIA, the foreign state has the burden of proving that it is entitled to sovereign immunity; i.e., that its conduct is not covered by a FSIA exception." *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 948 F.2d 90, 94 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *reaff'd*, 999 F.2d 33 (2d Cir.1993); *see also United States Fidelity and Guaranty Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98 Civ. 3099, 1999 WL 307642 at *4 (S.D.N.Y. May 17, 1999), *aff'd sub nom. United States Fidelity and Guaranty Co. v. Braspetro Oil Servs. Co.*, 199 F.3d 94 (2d Cir.1999). Yuzhnoye has not argued that it is entitled to immunity under the FSIA. Therefore, this Court has subject-matter jurisdiction and the service of process provisions at 28 U.S.C. § 1608 apply. *See* 28 U.S.C. § 1330(a)-(b).

■ Under 28 U.S.C. § 1608(b)(1), service on an agency or instrumentality of a foreign state may be made "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality." Space Systems argues that § 26 of the LSA constitutes a special arrangement for service within the meaning of the FSIA. Section 26 reads as follows:

26.0 NOTICES AND WORKING LANGUAGE

26.1 All notices and communications between the [p]arties shall be in writing and shall be effective, if delivered in person to the authorized representative of the recipient party at the address listed below, or sent by express mail or Data fax.

[addresses, fax numbers, and designations of Authorized Representatives omitted]

26.2 Notices shall be deemed to have been received by the recipient party, as follows:

(1) Letter—one week after date of sending

(2) Data fax—upon confirmation of receipt

(3) Express mail, upon receipt

26.3 All documentation, notices, reports and correspondence under this LSA shall be submitted and maintained in the English language.

Although service of process is not specifically mentioned in § 26, it falls within the category of "[a]ll notices and communications between the parties" in § 26.1. Thus, § 26 does establish a special arrangement for the service of process under the FSIA. This conclusion is supported by the fact that the LSA plainly provided for the arbitration of disputes and for a court proceeding to enforce the arbitration award. (LSA § 21.2.) Therefore, the service of process to begin the court proceeding is a "notice and communication" between the parties to the LSA.

Other courts have come to the same conclusion analyzing similar contract provisions. *See, e.g., Int'l Road Fed'n v. Embassy of the Democratic Republic of the Congo*, 131 F.Supp.2d 248, 251 (D.D.C. 2001) (sublease provision stating that "[a]ll notices, demands, or requests between Sublessor and Sublessee shall be delivered in person, by certified mail, . . . or by registered mail . . ." and providing addresses for notification is special arrangement under the FSIA); *Saunders Real Estate Corp. v. Consulate General of Greece*, No. Civ. A. 94–11951, 1995 WL 598964 at *2 (D.Mass. Aug. 11, 1995) (lease providing that "notices shall be effective when delivered in hand or sent by certified mail . . ." estab-

lished special arrangement under the FSIA); *Marlowe v. Argentine Naval Comm'n,* 604 F.Supp. 703, 704, 707–08 (D.D.C.1985) (provision that "[a]ll notices, requests, demands, or other communications to or upon the respective parties hereto shall be deemed to have been given or made when deposited in the mail..." is special arrangement under the FSIA); *cf. Berdakin v. Consulado de la Republica de El Salvador,* 912 F.Supp. 458, 466 (C.D.Cal.1995) (recital that "[w]henever *under this Lease a provision is made* for any demand, notice or declaration of any kind, it shall be in writing and served either personally or sent by registered or certified United States mail..." (emphasis added) was not special arrangement under the FSIA where service of process was not mentioned in lease provisions).

The fact that Space Systems purported to terminate the contract at some point before serving its petition does not prohibit it from using the special arrangement established in § 26. The LSA specifically contemplates that "disputes between the [p]arties arising out of this LSA" will be submitted to arbitration and that the parties can apply for judicial confirmation of an arbitration award. (LSA § 21.2.) The parties' dispute about the meaning of the termination clauses of the LSA clearly arises out of the LSA; Yuzhnoye acknowledged as much by submitting to arbitration. The enforcement of the award is part of the procedure agreed upon in the LSA and § 26 applies to notices relating to such enforcement. *Cf. Int'l Road Fed'n,* 131 F.Supp.2d at 251–52 (service of complaint according to special arrangement valid even though the plaintiff had terminated agreement specifying arrangement more than a year prior to service).

Space Systems has submitted documentary evidence that on March 27, 2001 the original Petition and Notice of Motion to Confirm the Arbitration Award and accompanying papers were sent to Yuzhnoye's designated representative by registered mail at the address specified in § 26 of the LSA. (de Harder Aff. Ex. C.) Thereafter, on April 20, 2001 Space Systems sent the amended petition to Yuzhnoye's designated representative by registered mail at the address specified in § 26 of the LSA. (De Harder Aff. Ex. K.) On April 20, 2001, Space Systems also sent the amended petition to Yuzhnoye's designated representative at the telefax number specified in § 26 of the LSA, and received a confirmation of receipt. (*Id.*) On these facts, § 26.1 of the LSA has been satisfied. Because § 26 was a special arrangement under the FSIA and was complied with, the petitioner properly served the respondents in accordance with 28 U.S.C. § 1608(b). Yuzhnoye's motion to dismiss for lack of personal jurisdiction and insufficient service of process is denied.

### III.

 In this Court, Yuzhnoye challenges the arbitrators' award based on the doctrine of manifest disregard of the law. Yuzhnoye's task is a formidable one. The party challenging an arbitration award generally bears a heavy burden of proof, *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir.1987), and limited review of arbitration decisions is necessary both to effectuate the parties' agreement to submit their disputes to arbitration and to avoid costly and protracted litigation about issues the arbitrators have already decided. *See, e.g., DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 821 (2d Cir.1997); *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993); *Consolidated Rail Corp. v. Metropolitan Transport. Auth.,* No. 95 Civ. 2142, 1996 WL 137587, at *19 (S.D.N.Y. Mar. 22, 1996).

■ Under the doctrine of manifest disregard of the law, an arbitration award may be vacated if it is based on "overt disregard of the law and not merely for an erroneous interpretation." *Folkways*, 989 F.2d at 111 (citing *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). The Court of Appeals for the Second Circuit has explained that "[t]o modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir.1998); *see also W.K. Webster & Co. v. American President Lines, Ltd.*, 32 F.3d 665, 669 (2d Cir.1994); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986); *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 893 (2d Cir.1985) ("Manifest disregard of the law may be found ... if the arbitrator 'understood and correctly stated the law but proceeded to ignore it.' " (citation omitted)).

■ The review of an arbitration award for manifest disregard of the law is not an inquiry into the correctness of the decision or a determination of whether the court would have reached the same conclusion. *Bobker*, 808 F.2d at 933–34; *Siegel*, 779 F.2d at 892–93 ("The erroneous application of rules of law is not a ground for vacating an arbitrator's award, nor is the fact that an arbitrator erroneously decided the facts.") (citations omitted). As the Court of Appeals explained in *Bobker*:

> Judicial inquiry under the "manifest disregard" standard is therefore extremely limited.... We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of the laws urged upon it.

*Bobker*, 808 F.2d at 934; *see also E.I. Dupont De Nemours & Co. v. Jo Tankers, B.V.*, No. 00 Civ. 5644, 2001 WL 435628 at *3–*4 (S.D.N.Y. April 30, 2001); *Consolidated Rail*, 1996 WL 137587, at *19 (manifest disregard standard is "extremely high" and "[t]he reviewing court is not to substitute its own judgment of the facts or interpretation of the contract for that of the arbitrators, even when convinced that they were plainly wrong.").

■ In this case, Yuzhnoye claims that the LSA was ambiguous as a matter of law and that the arbitrators failed to recognize this alleged ambiguity, and consequently did not apply the rules of contract construction that should have been applied and would have resulted in a more favorable contract construction for Yuzhnoye. Yuzhnoye contends that this amounted to manifest disregard of the law. Specifically, Yuzhnoye argues that the meaning of LSA § 19.3 is ambiguous. Section 19.3 provides:

> Upon the issuance of written notice to Yuzhnoye, SS/L shall have a right, notwithstanding any provision in this LSA to the contrary, to effect a no-cost termination and be entitled to a full refund for all payments rendered for the relevant Launch Services, under the following conditions:

> • • • • •

> (3) In the event a Successful Launch does not occur and SS/L elects not to order Replacement Launch Services pursuant to [§] 16.1.3.

Section 16.1.3 in turn states that:

> In the event a Successful Launch does not occur, SS/L may, at its option, elect not to order Replacement Launch Services, and terminate this LSA pursuant to [§] 19.3. Prior to taking any such

action, SS/L will consult with Yuzhnoye to determine the cause of the unsuccessful launch and possible other corrective actions.

Yuzhnoye argued at the arbitration that the word "relevant" in § 19.3 limits Space Systems' refund to amounts paid for the *failed* launch, and does not include amounts paid for other launches. The panel decided that "no ambiguity is created by the word 'relevant' as it clearly applies to the failed launch and future canceled launches." It also noted that Yuzhnoye's position, which was adopted by the dissenting arbitrator, "reads out the clear contract cancellation language of [§§] 16.1.3 and 19.3 and the 'full refund' and 'refund of all amounts paid' language of [§§] 19.3 and 19.3.1." [1]

Yuzhnoye now claims that the arbitrators manifestly disregarded California law, which is the applicable law under § 22 of the LSA. Yuzhnoye argues that California law establishes that a provision "will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, 627 (1995) (interpreting insurance policy). Yuzhnoye further argues that if the arbitrators had recognized the contracts' ambiguity, California law would require that they construe the ambiguity in Yuzhnoye's favor because they did not prepare the agreement.

The arbitrators' opinion does not reflect a refusal to apply any clearly applicable rule of law. Instead, the arbitrators found that the LSA was capable of only one construction and that the respondents' purportedly reasonable position ignored

sections of the contract which made the contract unambiguous. The arbitrators' decision was supported by the remainder of the *Waller* court's holding: "[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. Courts will not strain to create an ambiguity where none exists." *Waller*, 44 Cal.Rptr.2d 370, 900 P.2d at 627 (citations omitted).

Far from constituting manifest disregard of the law, the arbitrators' decision was perfectly consistent with the clear terms of the LSA. The LSA was terminated under § 19.3(3) of the LSA, and not under § 19.2 which allows for a termination for convenience and provides for various refunds. When there is a termination under § 19.3, as the arbitrators pointed out, the LSA provides for a "full refund for all payments rendered for the relevant Launch Services." Moreover, § 19.3.1 provides that in the case of such a termination, "Yuzhnoye shall *refund all amounts paid by SS/L* in accordance with [§] 6.0 . . . ." (Emphasis added.) Yuzhnoye has provided no reasonable explanation how "refund all amounts" can mean anything other than a full refund of all amounts paid. Further, § 16.1.3 states that Space Systems can "terminate *this LSA* pursuant to [§] 19.3" (emphasis added) if a successful launch does not occur, not that it can terminate only that portion of the LSA that related to the launch. Yuzhnoye's interpretation of the word "relevant" is untenable in the face of the clear language of §§ 19.3, 19.3.1, and 16.1.3.

■ Yuzhnoye also claims that the arbitrators manifestly disregarded the evi-

1. § 19.3.1 provides that "[u]pon the issuance of . . . notice [under § 19.3] by SS/L, Yuzhnoye shall have no claim for any further payment, including payments already invoiced in accordance with [§ ] 6.0, Payment. *Yuzhnoye shall*

*refund all amounts paid by SS/L in accordance with such article within ninety (90) days after issuance of said no cost termination notice."* (Emphasis added.) Section 6 sets forth the transaction's payment schedule and terms.

dence in calculating the amount awarded to Space Systems. In the arbitration, Yuzhnoye claimed that $14.5 million of the amount that Space Systems paid Yuzhnoye was for items that Space Systems admitted were outside the scope of the LSA, and the payment provisions in § 6, and therefore cannot be included in any refund. Space Systems responded that since the memoranda of understanding which set forth the additional payments referred to them as increases in the price of the LSA, and the work at issue was performed under the LSA, they were "payments rendered for the relevant Launch Services" and § 19.3 entitled Space Systems to a "full refund" of such payments. *See* SS/L App. Ex. 3. The panel stated that it had "considered and rejected" the respondents' $14.5 million counterclaim. There is no indication that the arbitrators manifestly disregarded the law or the evidence in reaching that conclusion. The decision was in fact a reasonable interpretation of the facts and the law.

Ultimately, Yuzhnoye's arguments amount to a disagreement reached by the arbitrators and fall well short of showing that the arbitrators manifestly disregarded the law. Yuzhnoye attempts to support its arguments by relying on *Halligan,* where the Court of Appeals for the Second Circuit recently vacated an arbitration award which failed to find that an employer had discriminated against an employee on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. *Halligan,* 148 F.3d at 204. This case is not similar to *Halligan.* In *Halligan,* unlike this case, the arbitration panel provided no explanation for an award that the Court of Appeals found to be unsupported and issued in the face of overwhelming evidence to the contrary and the result of which was to deprive a person of federal statutory rights. In this case, the reasoned decision of the arbitrators

was supported by the facts and deprived Yuzhnoye of no statutory rights.

### Conclusion

For the foregoing reasons, the Court grants Space Systems' amended petition to confirm the award. Yuzhnoye's motion to dismiss and cross-motion to vacate are denied. The Clerk of the Court is directed to enter judgment in accordance with this Opinion and to close the case.

**SO ORDERED.**